1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   JESUS BETANZO BASILIO,              No.   2:16-cv-00392-JAM-EFB

12              Plaintiff,

13       v.                             **ORDER GRANTING DEFENDANTS'
                                        MOTION TO DISMISS**
14   CITY OF FAIRFIELD, CITY OF
     FAIRFIELD POLICE DEPARTMENT,
15   WALT TIBBET, DOES 1-100,

16              Defendants.

17

18       Plaintiff Jesus Betanzo Basilio ("Plaintiff") sued the

19   City of Fairfield ("the City"), the Fairfield Police

20   Department ("FPD"), and FPD Chief of Police Walt Tibbet

21   ("Tibbet") (collectively "Defendants") for civil rights and

22   state law violations arising out of an interaction between

23   Plaintiff and FPD officers (Doc. #1).  Defendants move to

24   dismiss Plaintiff's complaint (Doc. #9).  Plaintiff opposes

25   the motion (Doc. #14).[1]

26

27   [1] This motion was determined to be suitable for decision without
     oral argument.  E.D. Cal. L.R. 230(g).  The hearing was
28   scheduled for June 14, 2016.

                                    1

1              I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

2          The Court takes the facts alleged by Plaintiff as true for

3    purposes of this motion.   In February 2014, FPD officers

4    arrested Plaintiff at his residence.   Compl. ¶ 11.   Plaintiff is

5    a Mexican-American male and was a minor at the time of the

6    arrest.   Id.   The officers approached Plaintiff and yelled at

7    him to get on the floor.   Id. ¶ 12.   Plaintiff was unarmed and

8    complied with the officers' requests.   Id.   The officers then

9    slammed their knees into Plaintiff's neck, shoulder, and face.

10   Id.   Some of the officers kicked Plaintiff in the temple.   Id.

11   Plaintiff was not resisting arrest while the officers were

12   kicking him.   Id.

13         One officer searched Plaintiff and forcefully pulled on

14   Plaintiff's testicles.   Id. ¶ 15.   The officer then placed

15   Plaintiff in the back of his patrol car.   Id.   While in the

16   patrol car, Plaintiff told officers that he was tired, did not

17   feel well, and that his head hurt.   Id. ¶ 19.   Plaintiff fainted

18   in the back of the police car.   Id. ¶ 20.

19         When Plaintiff arrived at the police station, officers took

20   him into an interrogation room.   Id. ¶ 21.   Plaintiff told

21   police officers that we was in pain and that he needed aspirin

22   and to be taken to the hospital.   Id. ¶ 22.   The officers did

23   not take Plaintiff to the hospital and left him in the room for

24   two hours.   Id.   Plaintiff fainted in the interrogation room.

25   Id.

26         At some point, the officers came back into the room asked

27   Plaintiff about a suspect in a shooting.   Id. ¶ 23.   Plaintiff

28   told the officers he "had no gang relations."   Id.   Plaintiff

1   was at the police station for five hours.  Id. ¶ 26.  Fairfield

2   police officers then transported him to a hospital.  Id.

3        Plaintiff sued Defendants in February 2016, alleging seven

4   causes of action: (1) excessive force pursuant to 42 U.S.C.

5   § 1983 ("§ 1983"), (2) denial of medical care pursuant to

6   § 1983, (3) violation of the Bane Act, (4) battery,

7   (5) negligence, (6) false imprisonment, and (7) false arrest.

8   Id. at 8-17.  Defendants move to dismiss each of Plaintiff's

9   claims, except for the battery claim.  Motion to Dismiss ("MTD")

10  at 1-2.

11

12                        II.   OPINION

13       A.   First Cause of Action: Excessive Force

14       Plaintiff brings his first cause of action for excessive

15  force under the Fourth and Fourteenth Amendments.  Compl. at 8.

16  Defendants argue that Plaintiff's claim must be dismissed to the

17  extent that it is brought under the Fourteenth Amendment because

18  an excessive force claim is limited to being brought under the

19  Fourth Amendment.  MTD at 4.  Defendants are correct.  The

20  Supreme Court has explicitly held that:

21       *all* claims that law enforcement officers have used
         excessive force—deadly or not—in the course of an
22       arrest, investigatory stop, or other "seizure" of a
         free citizen should be analyzed under the Fourth
23       Amendment and its "reasonableness" standard, rather
         than under a "substantive due process" approach.
24       Because the Fourth Amendment provides an explicit
         textual source of constitutional protection against
25       this sort of physically intrusive governmental
         conduct, that Amendment, not the more generalized
26       notion of "substantive due process," must be the guide
         for analyzing these claims.
27

28  ///

                              3

1  Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in

2  original).   Plaintiff's excessive force claim brought under

3  the Fourteenth Amendment is dismissed.   The excessive force

4  claim remains to the extent it is brought under the Fourth

5  Amendment.

6                    1. § 1983 Excessive Force Claim Against the City

7                         a. Plaintiff Fails to Allege a Policy or Custom
                            That Caused His Constitutional Injury
8

9       Defendants argue that the City cannot be liable under

10  § 1983 because Plaintiff fails to sufficiently allege Monell

11  liability.   MTD at 4-5.   A local government entity may be liable

12  under § 1983 when the alleged constitutional injury was caused

13  by the entity's "policy or custom."   Monell v. Dep't of Soc.

14  Servs. of City of New York, 436 U.S. 658, 694 (1978).   A

15  Plaintiff can successfully allege a policy or custom of a public

16  entity by showing: (1) that "a longstanding practice or custom

17  which constitutes the 'standard operating procedure' of the

18  local government entity;" (2) "the decision-making official was,

19  as a matter of state law, a final policymaking authority whose

20  edicts or acts may fairly be said to represent official policy

21  in the area of decision;" or (3) "an official with final

22  policymaking authority either delegated that authority to, or

23  ratified the decision of, a subordinate."   Newman v. San Joaquin

24  Delta Cmty. Coll. Dist., 814 F. Supp. 2d 967, 977 (E.D. Cal.

25  2011) (quoting Rosenbaum v. City & Cty. of S.F., 484 F.3d 1142,

26  1155 (9th Cir. 2007)).   To "sufficiently state a claim under

27  Monell, [a] plaintiff must allege *facts* establishing a policy,

28  it is not enough simply to state that there is a policy."   Smith

1  v. Stanislaus, 2012 WL 253241, at *4 (E.D. Cal. Jan. 26, 2012)

2  (emphasis added).

3      Defendants argue that Plaintiff fails to allege a

4  "longstanding practice or custom" because "Plaintiff's factual

5  allegations relate only to his particular incident, and there

6  are no facts showing a practice or custom beyond the subject

7  incident."  MTD at 6.  Defendants are correct.  In his

8  complaint, Plaintiff alleges that the City "maintained or

9  permitted one or more of the following official policies,

10  customs, or practices," and then lists several different

11  practices in generic terms.  Compl. ¶ 10.  But Plaintiff does

12  not provide facts to support these generic allegations.  The

13  facts in Plaintiff's complaint relate only to one encounter with

14  FPD.  There are no facts supporting the existence of any

15  "longstanding practice" which constitutes the "standard

16  operating procedure" of the FPD.  See Newman, 814 F. Supp. 2d at

17  977.

18      Defendants also argue that Plaintiff fails to allege a

19  ratification claim.  MTD at 6.  "To prove Monell liability based

20  on ratification, the plaintiff must show that the final

21  policymaker in question had knowledge of the constitutional

22  violation and actually approved of it.  A mere failure to

23  overrule a subordinate's actions, without more, is insufficient

24  to support a section 1983 claim."  Kyles v. Baker, 72 F. Supp.

25  3d 1021, 1044 (N.D. Cal. 2014) (internal quotation marks and

26  citations omitted).  "The final policymaker's response to the

27  subordinate's unconstitutional conduct must amount to more than

28  acquiescence; he or she must have affirmatively approved both

5

1  the subordinate's decision and the basis for it."  Id.  Tibbet

2  is the only potential "final policymaker" that Plaintiff

3  identifies, and there are no facts to indicate that Tibbet

4  "affirmatively approved" of anything that his subordinates did

5  on the day of Plaintiff's arrest.  Plaintiff states that "only

6  through discovery can Plaintiff perfect this allegation with

7  evidence."  Opp. at 8.  If that is true, then Plaintiff should

8  not have included this allegation in his complaint.

9  Plaintiff's ratification claim is, therefore, dismissed with

10  leave to amend.

11              b. Plaintiff Fails to State a Claim Against the
                   City for Inadequate Training
12

13      Next, Defendant argues that Plaintiff fails to state a

14  claim based on inadequate training.  MTD at 7.  "[T]he

15  inadequacy of police training may serve as the basis for Section

16  1983 liability only where the failure to train amounts to

17  deliberate indifference to the rights of persons with whom the

18  police come into contact."  Jones v. Cty. of Contra Costa, 2016

19  WL 1569974, at *3 (N.D. Cal. Apr. 19, 2016) (quoting City of

20  Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)).

21  Additionally, "failure to train may give rise to a Monell claim

22  only when the training itself caused the constitutional

23  violation – not in situations where an errant employee caused a

24  constitutional violation, despite adequate training."  Jones,

25  2016 WL 1569974, at *3.

26      Plaintiff alleges that the City "[f]ail[ed] to provide

27  adequate training and supervision to FPD Officers with respect

28  to constitutional limits on force, detention, and provision of

6

1  medical care."  Compl. ¶ 10(A).  Plaintiff provides only

2  conclusory allegations and no facts to support his claim that

3  the City improperly trained its officers.  Plaintiff's claim

4  against the City based on a failure to train theory is dismissed

5  with leave to amend.

6             2. § 1983 Claims Against Tibbet

7       Defendant Tibbet argues that any claims against him in his

8  official capacity should be dismissed.  MTD at 8.  When a

9  plaintiff files suit against both a local government entity and

10  an officer in his official capacity, "the court may dismiss the

11  officer as a redundant defendant."  Ctr. for Bio-Ethical Reform,

12  Inc. v. L.A. Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir.

13  2008).  Claims against officers in their personal capacities,

14  however, may remain.  Fontana v. Alpine Cty., 750 F. Supp. 2d

15  1148, 1155 (E.D. Cal. 2010).  Plaintiff's claims against Tibbet

16  in his official capacity in this complaint are hereby dismissed

17  with prejudice.

18       "[A] supervisory official can be found liable in his

19  individual capacity if there is a sufficient nexus between his

20  own conduct and the constitutional violations committed by

21  subordinates."  Johnson v. City of Vallejo, 99 F. Supp. 3d 1212,

22  1219 (E.D. Cal. 2015).  "In a section 1983 claim, a supervisor

23  is liable for the acts of his subordinates if the supervisor

24  participated in or directed the violations, or knew of the

25  violations of subordinates and failed to act to prevent them."

26  Id. (internal quotation marks and citations omitted).  Defendant

27  argues that Plaintiff fails to state a claim against Tibbet in

28  his individual capacity because there are no facts showing that

                              7

1  Tibbet "was present or even aware of the alleged acts at the

2  time of the incident."  MTD at 9-10.  Once again, Plaintiff

3  fails to provide any facts to support his conclusory allegations

4  regarding Tibbet's actions.  Thus, Plaintiff's § 1983 excessive

5  force claim against Tibbet in his individual capacity is

6  dismissed with leave to amend.

7     B.  Second Cause of Action: Failure to Provide Medical
       Services

8

9     The due process clause of the Fourteenth Amendment protects

10  the rights of people in police custody "to not have officials

11  remain deliberately indifferent to their serious medical needs."

12  Gibson v. Cty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002).

13  Officers or prison officials act with "deliberate indifference"

14  if they "deny, delay or intentionally interfere with medical

15  treatment."  Palmer v. Plummer, 1995 WL 381882, at *2 (N.D. Cal.

16  Jun. 20, 1995).  But, "the indifference to the inmate's medical

17  needs must be substantial; inadequate treatment due to

18  negligence, inadvertence, or differences in judgment between an

19  inmate and medical personnel does not rise to the level of a

20  constitutional violation."  Williams v. Ralston, 2014 WL

21  3926990, at *5 (C.D. Cal. Aug. 12, 2014).

22     Like his first cause of action, Plaintiff's second cause of

23  action is brought pursuant to § 1983.  Compl. at 10.  Thus, to

24  hold the City liable for failure to provide medical treatment,

25  Plaintiff must allege that a policy or practice of City caused

26  the constitutional violation.  Austin v. Cty. of Alameda, 2015

27  WL 7180616, at *1 (N.D. Cal. Nov. 16, 2015).

28     Plaintiff fails to allege a policy or practice of

1   deliberate indifference.  The only facts Plaintiff provides to

2   support the allegation of a policy or practice is his own

3   experience with the FPD.  This is insufficient to show that the

4   City had a policy or practice of acting deliberately indifferent

5   to the medical needs of those in custody.  See Gaines v. Cty. of

6   L.A., 2014 WL 2042243, at *5 (C.D. Cal May 16, 2014).

7        Defendants also argue that Plaintiff fails to state a

8   deliberate indifference claim against Tibbet.  MTD at 11-12.

9   There are no facts alleged in this complaint sufficient to

10  support a deliberate indifference claim against Tibbet.

11  Additionally, Plaintiff does not address in his opposition

12  Defendants' arguments regarding the second cause of action.

13  Plaintiff merely summarizes the law, but does not provide any

14  analysis to show that he has properly stated a deliberate

15  indifference claim against the City or Tibbet.  Plaintiff's

16  second cause of action is dismissed with leave to amend.

17        C.    Third Cause of Action: Bane Act

18       The Bane Act creates an individual cause of action where "a

19  person . . . whether or not acting under the color of law,

20  interferes by threat, intimidation, or coercion, or attempts to

21  interfere by threat, intimidation, or coercion" with a right

22  secured by federal or state law.  Cal. Civ. Code § 52.1(a).  "In

23  order to state a claim under this statute, Plaintiff must plead

24  facts showing violence or intimidation by threat of violence by

25  the accused defendant."  Clifford v. Regents of Univ. of Cal.,

26  2012 WL 1565702, at *9 (E.D. Cal. Apr. 30, 2012), aff'd, 584 F.

27  App'x 431 (9th Cir. 2014).  Pleading a violation of the Bane Act

28  requires a plaintiff to show "both a constitutional violation

1   and that the violation was brought about by threats,

2   intimidation, or coercion." Sandoval v. Cty. of Sonoma, 2016 WL

3   612905, at *2 (N.D. Cal. Feb. 16, 2016).  Additionally, "in the

4   context of claims involving wrongful detention, courts have

5   found that the [Bane Act] requires a showing of coercion

6   *independent* from the coercion inherent in the wrongful detention

7   itself."  Avila v. California, 2015 WL 6003289, at *2 (E.D. Cal.

8   Oct. 14, 2015) (internal quotation marks omitted) (emphasis

9   added).

10       Plaintiff does not allege a constitutional violation or use

11  of threats or coercion by Tibbet.  Plaintiff's Bane Act claim

12  against Tibbet in his official capacity is dismissed with

13  prejudice (because such a claim is duplicative of a claim

14  against the City) and the Bane Act claim against Tibbet in his

15  individual capacity is dismissed with leave to amend.

16       As to the liability of the City under the Bane Act, "public

17  entities may be held liable for injuries proximately caused by

18  their employees within the scope of employment if the act or

19  omission would have given rise to a cause of action against that

20  employee or his personal representative."  Morse v. Cty. of

21  Merced, 2016 WL 3254034, at *6 (E.D. Cal. Jun. 13, 2016)

22  (internal quotation marks and citations omitted).  Thus, the

23  City can be held liable under the Bane Act if the acts of the

24  police officers themselves give rise to a Bane Act claim.

25       Plaintiff alleges wrongful acts by various police officers,

26  but all such acts are in the context of the alleged false arrest

27  and false imprisonment.  In Plaintiff's opposition, he fails to

28  specifically identify any facts in his complaint which indicate

1  threats, intimidation, and coercion which are *independent* from

2  intimidation and coercion inherent in the alleged false arrest

3  and imprisonment itself.  Plaintiff's Bane Act claim against the

4  City is, therefore, dismissed with leave to amend.

5         D.    <u>Fifth Cause of Action: Negligence</u>

6       Plaintiff brings his negligence claim against both the City

7  and Tibbet.  Compl. at 14.  "Public entities in California are

8  not liable for state-law tort claims for any injuries caused by

9  their conduct except where such liability is expressly

10  authorized by statute."  <u>Dias v. City of San Leandro</u>, 2011 WL

11  2837597, at *3 (N.D. Cal. Jul. 15, 2011); Cal. Gov't Code

12  § 815.2.  Thus, the City is immune from liability under a common

13  law negligence claim.  Additionally, Plaintiff's allegations in

14  support of his negligence claim are conclusory and not supported

15  by any facts showing that Tibbet was involved in the FPD's

16  interactions with Plaintiff.  Thus, Plaintiff fails to plead a

17  common law negligence claim against Tibbet.

18       Plaintiff also alleges that Defendants are liable for

19  negligence per se because they violated California Government

20  Code § 845.6.  Compl. ¶ 55.  Section 845.6 states that

21  "[n]either a public entity nor a public employee is liable for

22  injury proximately caused by the failure of the employee to

23  furnish or obtain medical care for a prisoner in his custody;

24  but . . . a public employee, and the public entity where the

25  employee is acting within the scope of his employment, is liable

26  if the employee knows or has reason to know that the prisoner is

27  in need of immediate medical care and he fails to take

28  reasonable action to summon such medical care."  Cal. Gov't Code

1  § 845.6.  "Liability under section 845.6 is limited to serious

2  and obvious medical conditions requiring immediate care."  Jett

3  v. Penner, 439 F.3d 1091, 1099 (9th Cir. 2006).  Complaining

4  about a headache and asking for medication is insufficient to

5  trigger liability under § 845.6.  Irvine v. City & Cty. of San

6  Francisco, 2001 WL 967524, at *13 (N.D. Cal. Jul. 12, 2001);

7  Kinney v. Contra Costa Cty., 8 Cal. App. 3d 761, 770 (1970).  As

8  to the facts alleging that Plaintiff fainted in the police car

9  and in the interrogation room, Plaintiff does not show that any

10  officer "kn[ew] or ha[d] reason to know" that Plaintiff fainted

11  and was in need of medical attention.

12      Plaintiff's common law negligence claim against the City is

13  dismissed with prejudice.  Plaintiff's common law negligence

14  claim against Tibbet is dismissed with leave to amend.

15  Plaintiff's § 845.6 claims against the City and Tibbet are

16  dismissed with leave to amend.

17          E.    Sixth and Seventh Causes of Action: False Imprisonment
              and False Arrest
18

19      "False arrest and false imprisonment are not separate

20  torts.  False arrest is but one way of committing a false

21  imprisonment."  White v. City of Laguna Beach, 679 F. Supp. 2d

22  1143, 1158 (C.D. Cal. 2010).  "Under California law, the

23  elements of a claim for false imprisonment are: (1) the

24  nonconsensual, intentional confinement of a person; (2) without

25  lawful privilege; and (3) for an appreciable period of time,

26  however brief."  Hernandez v. Cty. of Marin, 2012 WL 1207231, at

27  *8 (N.D. Cal. Apr. 11, 2012).

28      Defendants argue that "no statutory basis is alleged for a

12

1    false imprisonment claim against the City, thus the claim

2    against it is not cognizable." MTD at 15. As discussed above,

3    a state entity in California is immune from tort liability

4    unless some statute abrogates that immunity. Plaintiff fails to

5    identify a statute under which Plaintiff can base the City's

6    liability. Plaintiff's false imprisonment claim against the

7    City is dismissed with leave to amend.

8         Plaintiff's seventh cause of action for false arrest is

9    dismissed with prejudice as duplicative of Plaintiff's false

10   imprisonment claim.

11

12                         III.   ORDER

13        Plaintiff's first cause of action for excessive force, to

14   the extent it is brought under the Fourteenth Amendment, is

15   dismissed with prejudice but remains to the extent it is brought

16   under the Fourth Amendment.

17        Plaintiff's claims against Chief Tibbet in his official

18   capacity are dismissed with prejudice.

19        Plaintiff's common law negligence claim against the City

20   (sixth cause of action) is dismissed with prejudice.

21        Plaintiff's false arrest claim (seventh cause of action) is

22   dismissed with prejudice.

23        Plaintiff's remaining claims against Tibbet in his

24   individual capacity and against the City that were challenged in

25   this motion to dismiss are dismissed with leave to amend.

26        Plaintiff shall file his amended complaint within twenty

27   days from the date of this Order. Defendants' responsive

28   pleadings are due within twenty days thereafter. The Court

1   advises that failure to cure the defects identified in this

2   Order may be grounds for dismissal of those claims without

3   further leave to amend.  Dick v. Am. Home Mortgage Servicing,

4   Inc., 2013 WL 5299180, at *6 (E.D. Cal. 2013). If Plaintiff

5   elects not to amend his complaint, the case will proceed on the

6   remaining claims and Defendants shall file their answer to the

7   complaint within thirty days from the date of this Order.

8        Finally, Defendants' reply brief is five pages longer than

9   the page limit allowed by the Court in its Order re Filing

10  Requirements (Doc. #7-2).  As indicated by the Order, the Court

11  did not consider any arguments made past the fifth page of the

12  reply.  Counsel for Defendants must pay a $250.00 sanction

13  ($50.00 per page for the five pages over the limit) within ten

14  days of the date of this order.

15       IT IS SO ORDERED.

16  Dated: July 13, 2016

17

18                                    JOHN A. MENDEZ,
                                      UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28

14